**Thomas & Laura Sheedy**
**11 Harrington Rd.**
**Lexington, MA 02421**

**Lender:**
**Chase/Washington Mutual**
**3415 Vision Dr.**
**Columbus, OH 43219-6009**

Prior to 4/16/2004, Clients signed a mortgage application for $810,000 with Lender to refinance the above mentioned property. The Evidence supplied by the clients and current servicer would indicate that the Clients did not receive a copy of their initial application within 72 hours of signing their application

**TILA 226.17(a)1**

The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures required by this subpart may be provided to the consumer in electronic form, subject to compliance with the consumer consent and other applicable provisions of the Electronic Signatures in Global and National Commerce Act.

**TILA 226.19(a)**

In a residential mortgage transaction subject to the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) the creditor shall make good faith estimates of the disclosures required by § 226.18 before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.

**RESPA 24 CFR 3500.6**

A bank must provide the borrower with a copy of the Special Information Booklet either at the time a written application is submitted or no later than three business days after the application is received. If the application is denied before the end of the three-business-day period, the bank need not provide the booklet. If the borrower uses a mortgage broker, the broker, rather than the bank, must provide the booklet.

**RESPA 24 CFR 3500.6(a)**

Requires certain disclosures such as but not limited to Good Faith Estimate, Truth-in-Lending, Servicing Transfer, and Adjustable Rate Booklet, Right to Copy of Appraisal, Federal Equal Opportunity, and various other exhibits to be provided to the borrower within three business days from date of original application (early disclosures).

**RESPA 24 CFR 3500.7**

A lender must provide, in a clear and concise form, a good faith estimate of the amount of, or range of, settlement charges the borrower is likely to incur. The GFE must include all charges that will be listed in Section L of the HUD-1 Settlement Statement. It must be provided no later than three business days after receipt of the written application.

The purpose of the Truth In Lending Act is to require a meaningful disclosure of credit terms so that the borrower will be able to compare the terms of different loans available to him and to protect the consumer against unfair lending practices.
Under RESPA, Reg Z, for a purchase loan, an early Truth In Lending is required to be issued within three days of the loan application. The purpose of the Truth In Lending Disclosure is to allow a borrower to compare different loan programs for the best loan available. Failure to provide disclosures throughout the loan process as loan terms change circumvents the spirit of the Truth-In-Lending Act. If the broker does not issue the initial disclosures, it is incumbent upon the lender to [illegible] of the loan file.

## RESPA 24 CFR 3500.21b,b3i,b3iiiBv,C(c)

Servicing Disclosure Statement and Applicant Acknowledgement requirements:
[illegible] the time of application for a mortgage servicing loan is submitted, or within 3 business days after submission of the application, the lender, mortgage broker who anticipates using table funding, or dealer who anticipates a first lien dealer loan shall provide to each person who applies for such a loan a Servicing Disclosure Statement.
Whether the servicing of the loan may be assigned, sold or transferred to any other person at any time while the loan is outstanding. If the lender, table funding mortgage broker, or dealer in a first lien dealer loan does not engage in the servicing of any mortgage servicing loans, the disclosure may consist of a statement to the effect that there is a current intention to assign, sell, or transfer servicing of the loan.
A written acknowledgement that the applicant and any co-applicant has/have read and understood the disclosure, and understand that the disclosure is a required part of the mortgage application. This acknowledgement shall be evidenced by the signature of the applicant and any co-applicant.
Servicing Disclosure Statement and Applicant Acknowledgement; delivery. The lender, table funding mortgage broker, or dealer that anticipates a first lien dealer loan shall deliver Servicing Disclosure Statements to each applicant for mortgage servicing loans. Each applicant or co-applicant must sign an Acknowledgement of receipt of the Servicing Disclosure Statement [illegible] settlement.

## Mass 940 CMR 8.05(1)

It is an unfair or deceptive act or practice for a mortgage broker or mortgage lender to fail to make any disclosure, or fail to provide any document, to a consumer required by and at the time specified by any applicable state or federal law, regulation or directive.

At consummation on 4/16/2004, Clients received a 30 year mortgage for $810,000. They consummated financing based on a 30 year amortized loan with an initial interest rate of 3.625% and an interest only payment of $2,446.88 locked in for 60 months. On the 61st payment, the payment recasts every twelve months as a principal and interest payment based on the CMT Index of 1.32% + 2.75% for the remainder of the loan.

This would contradict the TIL statement which states that the payment is locked in after the 60th month to a principal and interest payment of $4,331.58 for the remaining 299 months of the loan. This is deceiving because the payment is not locked for any period greater than 12 months.

It should also be noted that with this mortgage having an adjustable rate feature any proposed payment after the first recast date would be impossible to accurately predict. There is no way to know what the

CMT Index (which the recast rate is based on) will be 60 months in the future. This was not disclosed to the Clients and was clearly done to induce clients to sign at closing. This loan also appears to be a stated income loan because Chase did not provide any income documentation as requested by the Examiner.

**<u>5000 - FDIC Statements of Policy</u>**

> "When an institution offers nontraditional mortgage loan products, underwriting standards should address the effect of a substantial payment increase on the borrower's capacity to repay when loan amortization begins." "Ensure that loan terms and underwriting standards are consistent with prudent lending practices, including consideration of a borrower's repayment capacity;" "For all nontraditional mortgage loan products, an institution's analysis of a borrower's repayment capacity should include an evaluation of their ability to repay the debt by final maturity at the fully indexed rate assuming a fully amortizing repayment schedule"

**<u>TILA 226.34(a)(4)</u>**

> Repayment ability. Engage in a pattern or practice of extending credit subject to § 226.32 to a consumer based on the consumer's collateral without regard to the consumer's repayment ability, including the consumer's current and expected income, current obligations, and employment. There is a presumption that a creditor has violated this paragraph (a)(4) if the creditor engages in a pattern or practice of making loans subject to § 226.32 without verifying and documenting consumers' repayment ability.

**<u>Mass 940 CMR 8.06(16)</u>**

> It is an unfair or deceptive act or practice for a mortgage broker or lender to process or make a mortgage loan without documenting or to verify the borrower's income (a so-called "no documentation," "no doc," "stated income" or "limited documentation" loan) unless the broker or lender, as applicable, first provides a written document to the borrower which must be signed by the borrower in advance of the closing, and which: a. identifies the borrower's income and the source of the income; and b. provides detailed information, if true, that by applying for a mortgage loan on a no- or limited documentation basis, the consumer will pay a higher interest rate or increased charges, or have less favorable terms for the mortgage loan, including information concerning the precise increase in interest rate, charges, or the nature of the less favorable terms. Provided, however, that if a mortgage broker or lender arranges or makes a mortgage loan using a No Income Loan Product (as defined herein), which loans shall remain subject to Section 8.06(15), the requirement in clause a. of the preceding sentence shall not apply. It is an unfair or deceptive act or practice for a mortgage lender or broker to process or make a mortgage loan on a no- or limited documentation basis if the stated income provided by the borrower with respect to the no- or limited documentation loan contradicts information previously obtained by the broker or lender with respect to that borrower in connection with the same proposed loan, absent a documented change in circumstances or other documented explanation for the discrepancy between the prior information and the later income representation. Notwithstanding the foregoing, it is an unfair or deceptive act or practice for a mortgage lender to underwrite or close a loan without at least verifying the employment or income of the borrower when the amount of the income stated is not reasonable for the actual employment status or experience of the borrower known to the lender, or when the borrower's stated employment or stated income is not reasonable in light of the borrower's circumstances known to the lender.

**Consumer Credit Protection Act – Section 112**

Whoever willfully and knowingly:
(1) gives false or inaccurate information or fails to provide information which he is required to disclose under the provisions of this title or any regulation issued thereunder, (2) uses any chart or table authorized by the Board under section 107 in such a manner as to consistently understate the annual percentage rate determined under section 107(a)(1)(A), or (3) otherwise fails to comply with any requirement imposed under this title, shall be fined not more than $5,000 or imprisoned not more than one year, or both.

**Federal Trade Commission Act 15 USC 45a(1)**

Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful

**(1) Penalty for violation of order; injunctions and other appropriate equitable relief**

Any person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States. Each separate violation of such an order shall be a separate offense, except that in a case of a violation through continuing failure to obey or neglect to obey a final order of the Commission, each day of continuance of such failure or neglect shall be deemed a separate offense. In such actions, the United States district courts are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission.

**(m) Civil actions for recovery of penalties for knowing violations of rules and cease and desist orders respecting unfair or deceptive acts or practices; jurisdiction; maximum amount of penalties; continuing violations; de novo determinations; compromise or settlement procedure**

**(1)(A)** The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this chapter respecting unfair or deceptive acts or practices (other than an interpretive rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1) of this section) with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule. In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

**(B)** If the Commission determines in a proceeding under subsection (b) of this section that any act or practice is unfair or deceptive, and issues a final cease and desist order, other than a consent order, with respect to such act or practice, then the Commission may commence a civil action to obtain a civil penalty in a district court of the United States against any person, partnership, or corporation which engages in such act or practice—

**(1)** after such cease and desist order becomes final (whether or not such person, partnership, or corporation was subject to such cease and desist order), and

**(2)** with actual knowledge that such act or practice is unfair or deceptive and is unlawful under subsection (a)(1) of this section.

In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

**(C)** In the case of a violation through continuing failure to comply with a rule or with subsection (a)(1) of this section, each day of continuance of such failure shall be treated as a separate violation, for purposes of subparagraphs (A) and (B). In determining the amount of such a civil penalty, the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require.

**(2)** If the cease and desist order establishing that the act or practice is unfair or deceptive was not issued against the defendant in a civil penalty action under paragraph (1)(B) the issues of fact in such action against such defendant shall be tried de novo. Upon request of any party to such an action against such defendant, the court shall also review the determination of law made by the Commission in the proceeding under subsection (b) of this section that the act or practice which was the subject of such proceeding constituted an unfair or deceptive act or practice in violation of subsection (a) of this section.

**Mass 940 CMR 8.05(1)**

It is an unfair or deceptive act or practice for a mortgage broker or mortgage lender to fail to make any disclosure, or fail to provide any document, to a consumer required by and at the time specified by any applicable state or federal law, regulation or directive.

**Mass 940 CMR 8.06(1)**

It is an unfair or deceptive act or practice for a mortgage broker or lender to make any representation or statement of fact if the representation or statement is false or misleading or has the tendency or capacity to be misleading, or if the mortgage broker or lender does not have sufficient information upon which a reasonable belief in the truth of the representation or statement could be based. Such claims or representations include, but are not limited to, the availability, terms, conditions, or charges, incident to the mortgage transaction and the possibility of refinancing. In addition, other such claims and representations by the broker may include the amount of the brokerage fee, the services which will be provided or performed for the brokerage fee, the borrower's right to cancel any agreement with the mortgage broker, the borrower's right to a refund of the brokerage fee, and the identity of the mortgage lender that will provide the mortgage loan or commitment.

**MGL Chapter 93A Section 1**

The following words, as used in this chapter unless the text otherwise requires or a different meaning is specifically required, shall mean—

(a) "Person" shall include, where applicable, natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity.

(b) "Trade" and "commerce" shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.

(c) "Documentary material" shall include the original or a copy of any book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription, or other tangible document or recording, wherever situate.

(c) "Examination of documentary material", the inspection, study, or copying of any such material, and the taking of testimony under oath or acknowledgment in respect of any such documentary material.

## MGL Chapter 93A Section 9

(1) Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause nine of section three of chapter one hundred and seventy-six D may bring an action in the superior court, or in the housing court as provided in section three of chapter one hundred and eighty-five C whether by way of original complaint, counterclaim, cross-claim or third party action, for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

(2) Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons; the court shall require that notice of such action be given to unnamed petitioners in the most effective practicable manner. Such action shall not be dismissed, settled or compromised without the approval of the court, and notice of any proposed dismissal, settlement or compromise shall be given to all members of the class of petitioners in such manner as the court directs.

(3) At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper. The demand requirements of this paragraph shall not apply if the claim is asserted by way of counterclaim or cross-claim, or if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section. Notwithstanding any other provision to the contrary, if the court finds any method, act or practice unlawful with regard to any security or any contract of sale of a commodity for future delivery as defined in section two, and if the

court finds for the petitioner, recovery shall be in the amount of actual damages.

(3A) A person may assert a claim under this section in a district court, whether by way of original complaint, counterclaim, cross-claim or third-party action, for money damages only. Said damages may include double or treble damages, attorneys' fees and costs, as herein provided. The demand requirements and provision for tender of offer of settlement provided in paragraph (3) shall also be applicable under this paragraph, except that no rights to equitable relief shall be created under this paragraph, nor shall a person asserting a claim hereunder be able to assert any claim on behalf of other similarly injured and situated persons as provided in paragraph (2).

(4) If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action; provided, however, the court shall deny recovery of attorney's fees and costs which are incurred after the rejection of a reasonable written offer of settlement made within thirty days of the mailing or delivery of the written demand for relief required by this section.

There is no paragraph (5).

(6) Any person entitled to bring an action under this section shall not be required to initiate, pursue or exhaust any remedy established by any regulation, administrative procedure, local, state or federal law or statute or the common law in order to bring an action under this section or to obtain injunctive relief or recover damages or attorney's fees or costs or other relief as provided in this section. Failure to exhaust administrative remedies shall not be a defense to any proceeding under this section, except as provided in paragraph seven.

(7) The court may upon motion by the respondent before the time for answering and after a hearing suspend proceedings brought under this section to permit the respondent to initiate action in which the petitioner shall be named a party before any appropriate regulatory board or officer providing adjudicatory hearings to complainants if the respondent's evidence indicates that:

(a) there is a substantial likelihood that final action by the court favorable to the petitioner would require of the respondent conduct or practices that would disrupt or be inconsistent with a regulatory scheme that regulates or covers the actions or transactions complained of by the petitioner established and administered under law by any state or federal regulatory board or officer acting under statutory authority of the commonwealth or of the United States; or

(b) that said regulatory board or officer has a substantial interest in reviewing said transactions or actions prior to judicial action under this chapter and that the said regulatory board or officer has the power to provide substantially the relief sought by the petitioner and the class, if any, which the petitioner represents, under this section.

Upon suspending proceedings under this section, the court may enter any interlocutory or temporary orders it deems necessary and proper pending final action by the regulatory board or officer and trial, if any, in the court, including issuance of injunctions, certification of a class, and orders concerning the presentation of the matter to the regulatory board or officer. The court shall issue appropriate interlocutory orders, decrees and injunctions to preserve the status quo between the parties pending final action by the regulatory board or officer and trial and shall stay all proceedings in any court or before any regulatory board or officer in which petitioner and respondent are necessarily involved. The court may issue further orders, injunctions or other relief while the matter is before the regulatory board or officer and shall terminate the suspension and bring the matter forward for trial if it finds (a) that the proceedings before the regulatory board or officer are unreasonably delayed or otherwise unduly prejudicial to the interests of a party

> before the court, or [illegible] that the regulatory board or [illegible] has not taken final action within six months of the [illegible] of the order suspending proceedings under this chapter.
> (e) Except as provided in section [illegible], recovering or failure to recover an award of damages or other relief in any administrative or judicial proceeding, except proceedings authorized by this section, by any person entitled to bring an action under this section, shall not constitute a bar to, or limitation upon relief authorized by this section.

The terms were not disclosed to the Client as required under the ECOA.

**ECOA 202.4d (Regulation B)**

> Form of disclosures — (1) General rule. A creditor that provides in writing any disclosures or information required by this regulation must provide the disclosures in a clear and conspicuous manner and, except for the disclosures required by §§ 202.5 and [illegible], in a form the applicant may retain.

Examiner believes Lender's actions in negotiation and execution of the loan documents contained all the elements necessary to render the mortgage contract void for fraud and misrepresentation. Lender through affirmative statements and material misrepresentations regarding the essential terms of the proposed terms of the proposed mortgage (the true price of the loan, the attempted waiver of consumer protections) reasonably induced Client's signature. **(Greene v. Gibraltar Mortgage Investment Corp. 488 F. Supp. 177(DDC 1980))**

It appears Client was not given a copy of their Appraisal Report at time of consummation.

**ECOA 202.14(a) (Regulation B)**

> A creditor shall provide a copy of an appraisal report used in connection with an application for credit that is to be secured by a lien on a dwelling. A creditor shall comply with either paragraph (a)(1) or (a)(2) of this section.

It appears Client did not receive CHARM Book.

**RESPA 24 CFR 3500.6**

> A bank must provide the borrower with a copy of the Special Information Booklet either at the time a written application is submitted or no later than three business days after the application is received. If the application is denied before the end of the three-business-day period, the bank need not provide the booklet. If the borrower uses a mortgage broker, the broker, rather than the bank, must provide the booklet.

It appears Client was not given any Credit Scoring information that was used to determine the interest rate they qualified for.

**Fair and Accurate Credit Transaction Act of 2003**

> Credit Scoring Information: The credit scoring information that must be provided [illegible] set forth in Section [illegible] of the FACT Act, which amends Section [illegible] of the FCRA by adding a new subsection [illegible]. The credit scoring information must include the following:
>
> (1) The current credit score of the consumer or the most recent credit score of the consumer that was previously calculated by the credit reporting agency for a purpose related to the extension of credit;

[illegible]. All of the key factors that adversely affected the credit score of the consumer in the model used, the total number of which shall not exceed four (4), unless a key factor that adversely affects the consumer's credit score consists of the number of enquiries made with respect to a consumer report, in which case, then five (5) key factors may be listed;
[illegible]. The date on which the credit score was created; and
[illegible]. The name of the person or entity that provided the credit score or credit file upon which the credit score was created.

Examiner also requested but did not receive the following from Chase:

- Initial Loan Application and Final Loan Application (Forms 1003)
- Executed Notice of Right to Cancel (if refinance)
- Copies of Executed Mortgage/Deed of Trust and all Riders (reflecting of copies of original executed all parties)
- A True And Correct Copy of the Original Mortgage Note and All Addendums/Riders
- Initial and Final Truth-in-Lending Statement
- Initial Good Faith Estimates
- Any all Federal & state disclosures that required a borrower(s) signature
- Final Closing Statements (HUD-1)
- True and Correct Copy of the signed Appraisal
- Credit Report used to qualify for loan
- Grant/Warranty Deed(s)
- Any and all income documents provided by borrower to corroborate their income
- Copy of all title commitments and closing documents
- Copy of Loan Payment History – This must include all payments made and all fees incurred along with all legends and codes used in respect to record keeping and accounting regarding accounts to subject loan by lender or servicing agent
- A copy of proposed Escrow amounts and actual Escrow amounts.
- A list of Escrow Credits and Disbursements and a reason for every entry and the date each such entry was made
- Certified Copy of Original Assignment of Mortgage and any subsequent Assignments of Mortgage
- Location of Original Mortgage Note and original Executed Mortgage
- Any and all Trust Agreements between the closing lender and/or any other lender or funding source and party or parties who could claim an interest in the subject loan and underlying note and mortgage
- Any Pooling Agreements between the closing lender and/or any other lender or funding source and party or parties who could claim an interest instant in the subject loan and underlying note and mortgage
- Any Servicing Agreements between the closing lender and/or any other lender or funding source and party or parties who could claim an interest instant in the subject loan and underlying note and mortgage
- Master Purchasing Agreements
- Any Special Purpose Vehicle or SPE Agreements
- Copies of the Executed Pooling and Servicing Agreements Dated for Asset Backed Pass-Through Certificate Series that the subject loan is a part of
- The exact name of the Asset Backed Security Trust that this mortgage was sold into
- The name of the Trustee of the asset backed mortgage Security trust which bought this mortgage

**RESPA 24 CFR 3500.21(C)(3)**

The signed Applicant Acknowledgment(s) shall be retained for a period of 5 years after the date of settlement as part of the loan file for every settled loan. There is no requirement for retention of Applicant Acknowledgment(s) if the loan is not settled.

**RESPA 24 CFR 3500.21**

(e) Duty of loan servicer to respond to borrower inquiries—(1) Notice of receipt of inquiry. Within 20 business days of a servicer of a mortgage servicing loan receiving a qualified written request from the borrower for information relating to the servicing of the loan, the servicer shall provide to the borrower a written response acknowledging receipt of the qualified written response. This requirement shall not apply if the action requested by the borrower is taken within that period and the borrower is notified of that action in accordance with the paragraph (f)(3) of this section. By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written request.

(2) Qualified written request; defined. (i) For purposes of paragraph (e) of this section, a qualified written request means a written correspondence (other than notice on a payment coupon or other payment medium supplied by the servicer) that includes, or otherwise enables the servicer to identify, the name and account of the borrower, and includes a statement of the reasons that the borrower believes the account is in error, if applicable, or that provides sufficient detail to the servicer [illegible]

(3) Action with respect to the inquiry. Not later than [illegible] business days after receiving a qualified written request from the borrower, and, if applicable, before taking any action with respect to the inquiry, the servicer shall:

(i) Make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction. This written notification shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower; or

(ii) After conducting an investigation, provide the borrower with a written explanation or clarification that includes:

(A) To the extent applicable, a statement of the servicer's reasons for concluding the account is correct and the name and telephone number of an employee, office, or department of the servicer that can provide assistance to the borrower; or

(B) Information requested by the borrower, or an explanation of why the information requested is unavailable or cannot be obtained by the servicer, and the name and telephone number of an employee, office, or department of the servicer that can provide assistance to the borrower.

(4) Protection of credit rating. (i) During the [illegible]-business day period beginning on the date of the servicer receiving from a borrower a qualified written request relating to a dispute on the borrower's payments, a servicer may not provide adverse information regarding any payment that is the subject of the qualified written request to any consumer reporting agency (as that term is defined in section [illegible] of the Fair Credit Reporting Act, 15 U.S.C. 1681a).

(ii) In accordance with section 17 of RESPA (12 U.S.C. [illegible]), the protection of credit rating provision of paragraph (e)(4)(i) of this section does not impede a lender or servicer from pursuing any of its remedies, including initiating foreclosure, allowed by the underlying mortgage loan instruments.

(f) Damages and costs. (1) Whoever fails to comply with any provision of this section shall be liable to the borrower for each failure in the following amounts:

(i) Individuals. In the case of any action by an individual, an amount equal to the sum of all actual damages sustained by the individual as the result of the failure and, when there is a pattern or practice of noncompliance with the requirements of this section, any additional damages in an amount not to exceed $[illegible].

CONCLUSION

There are serious problems with the way this loan was originated. The majority of which were committed by the lender. It contains elements of illegal bait and switch and deception practices. It is Examiner's conclusion that Client should seek legal representation immediately because there are grounds for unjust enrichment, deceptive practices, as well as the above mentioned violations of the FTC Act, RESPA, TILA, FACTA,ECOA and Massachusetts law.

## Disclaimer

The comments, opinions, conclusions contained in this Mortgage Loan Audit Report are not intended to provide legal advice and should not be relied on for legal advice. The Applicant(s) is hereby advised that they should consult their legal adviser if they seek legal advice regarding the information contained herein.

## Certification

The comments, opinions, and conclusions of the Examiner are based on information provided by Applicant(s) in accordance with the Terms and Conditions of the Mortgage Fraud Investigation Agreement. If information was submitted by either the Mortgage Broker, or the Mortgage Lender or both regarding this Mortgage transaction, whether or not submitted in response to a Qualified Written Request (QWR) if demanded by the Examiner, said information provided has been fully reviewed by Examiner, and given full consideration in the process of forming the comments, opinions, and conclusions contained in this Mortgage Loan Audit Report.

Based on the information submitted by the Applicant(s) and if applicable, all other parties involved with this transaction, it is the opinion of the Examiner that Applicant(s) should seek the advice of a qualified licensed attorney to assess the extent of any legal remedies that may be available and to what extent and how, such remedies may provide a benefit to the Applicant(s).

Stephen J. Dibert 12/28/2009
MFI Miami, LLC Examiner

**Washington Mutual Bank, FA** **DISCLOSURE LETTER**

LAURA SHEEDY
THOMAS SHEEDY
11 harington road
lexington, MA 02421

Loan No.: [redacted]9818

Date: MARCH 26, 2004

Property Address: 11 harington road
lexington, MA 02420

Subject: Your Initial Disclosure Notices

Thank you for your recent application with Washington Mutual Bank, FA

The following documents are enclosed to assist you with questions you may have regarding your loan. Please return those items requiring signatures in the postage paid envelope provided:

**Please sign and return one copy of any of the following enclosed forms:**

- ☒ Servicing Disclosure Statement
- ☒ Affiliated Business Arrangement Disclosure Statement
- ☐ Loan Application
- ☒ Addendum to Loan Application - (Notices, Disclosures and Credit Authorization Release)
- ☒ Forced-Placed Insurance Disclosure
- ☒ Insurance and Escrow Impound Account Requirements
- ☒ Interest Rate and Loan Fee Policy (Pricing Package)
- ☐ Receipt for Loan Application Deposit
- ☒ Anti-Coercion Disclosure
- ☐ Other ______

**Please complete I.D. information for each applicant and return to lender:**

- ☒ Applicant Identification Verification

**The following items are being enclosed for your information:**

- ☐ Truth-in-Lending Disclosure Statement (Purchase or Initial Construction of primary residence)
- ☒ Good Faith Estimate of Borrower's Settlement Costs
- ☐ Automatic Loan Payment Authorization
- ☒ Adjustable Rate Mortgage Loan Disclosure Statement (Adjustable Rate Loans Only)
- ☒ Consumer Handbook on Adjustable Rate Mortgage (Adjustable Rate Loans Only)
- ☐ Brochure "What are the benefits of an Option ARM?" (Option ARM Loans Only)
- ☐ The HUD Booklet, "Buying Your Home, Settlement Costs and Helpful Information" (Purchase or Construction Only)
- ☐ Broker Demand (Applicable for Broker Referral Loans Only)
- ☐ Other ______

We hope these items will assist you in your decision to obtain a loan from us. We are looking forward to the opportunity to serve you. If you have any questions about this information, please contact Robert DeVasto at (781)944-1300.

Sincerely,

Washington Mutual Bank, FA

**Washington Mutual Bank, FA**

## TRUTH IN LENDING DISCLOSURE STATEMENT

| CUSTOMER NAME | LOAN NUMBER | DATE |
|---|---|---|
| LAURA M SHEEDY, THOMAS SHEEDY | [redacted]9818 | 04/16/2004 |

PRESENT ADDRESS 11 HARRINGTON ROAD, LEXINGTON, MASSACHUSETTS 02420

| ANNUAL PERCENTAGE RATE The Cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 4.022 | $644,530.16 | $801,757.50 | $1,446,287.56 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE Monthly Beginning |
|---|---|---|
| 60 | 2,446.88 | 06/01/2004 |
| 299 | 4,331.58 | 06/01/2009 |
| 1 | 4,332.44 | 05/01/2034 |

VARIABLE RATE: YOUR LOAN CONTAINS A VARIABLE-RATE FEATURE. DISCLOSURES ABOUT THE VARIABLE-RATE FEATURE HAVE BEEN PROVIDED TO YOU EARLIER.

SECURITY: You are giving a security interest in:

☐ the goods or property being purchased.

☒ 11 HARRINGTON ROAD
LEXINGTON, MASSACHUSETTS 02420

FILING FEES: $28.00 Fees paid to government officials with respect to security instrument

LATE CHARGE: If a payment is late, you will be charged 3.000% of the payment.

ASSUMPTION: Someone buying your house ☒ can, subject to conditions and under certain circumstances ☐ cannot assume the remainder of the mortgage on the original terms

PREPAYMENT: If you pay off early, you ☒ may ☐ may not have to pay a penalty. If you pay off early, you ☐ may ☒ may not be entitled to a refund of part of the finance charges already paid

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties

e means an estimate

You may obtain property insurance from anyone you want that is acceptable to Washington Mutual Bank, FA (the "Lender").

☐ Estimated Disclosure-All numerical disclosures, except late payment disclosure, are estimates

☒ Final Disclosure

☐ Itemization of Amount Financed attached.

I acknowledge receipt of a copy of this Disclosure Statement and have not yet signed any documents evidencing or securing this proposed loan.

| | |
|---|---|
| LAURA M SHEEDY Date | THOMAS SHEEDY Date |
| LAURA M SHEEDY Date | Date |
| Date | Date |